DUDLEY G. GAUTIER and JOSIAH H. GAUTIER, Respondents, *v.* THE DOUGLASS MANUFACTURING COMPANY, THE RUSSELL & ERWIN MANUFACTURING COMPANY and THOMAS J. S. FLINT, Impleaded, etc., Appellants.

*Purchaser of trust estate with knowledge of the trust — liabilities of — Sale of goods — implied warranty — notice of defects.*

A purchaser of a trust estate, with knowledge of the trust, is subject to all the duties in respect to the same which rested upon the trustee from whom he purchased.

In an action to recover the price of certain steel sold to be used in the manufacture of edged tools, the defense was that the steel was defective and of poor quality. It was admitted that the quality of the steel could not be ascertained without "working it up," and that an inspection and examination of it would not reveal its defects. *Held*, that the implied warranty that it was fit for the purpose for which it was sold in order to take advantage of the purchaser was not bound to test it at once and give notice of the defects, but that he was entitled to deduct the damages, sustained by reason of its imperfection, from the price, in an action brought to recover the latter.

Appeal from a judgment in favor of the plaintiff rendered at Special Term, and from an order denying a motion for a new trial made on the ground of surprise, etc.

*L. R. Marsh,* for the appellants.

*John E. Parsons,* for the respondents.

Brady, J. :

The plaintiffs are copartners in the business of manufacturing steel under the firm name of D. G. Gautier & Co.

The Russell & Erwin Manufacturing Company, one of the defendants, is a corporation established under the laws of Connecticut and located at New Britain, Connecticut, where its office and factories are situated. The company is engaged in the business of manufacturing and dealing in hardware, having its principal warehouse for the sale of goods in Chambers street, in the city of New York.

During the year 1873, and previous thereto and until April, 1874, Richard P. Bruff, also named as defendant in the complaint, was the managing agent of the Russell & Erwin Manufacturing Company's said warehouse in New York and held a written power of attorney from that company for the performance of certain acts in the execution and prosecution of its business at the city of New York, the nature and contents of which power of attorney are set forth in the answer of the company.

Previous to the year 1873 one Frederick L. Ames held the title of two certain factories for the manufacturing of mechanics' tools, one of the factories being known as the " F. L. Ames Chisel Works," situated at Arlington, Vermont, and the other as the " F. L. Ames Auger Works," situated at Seymour, Connecticut.

Said Ames carried on the business of these factories under the name of the " Douglass Manufacturing Company," and Thomas Douglass, also named in the complaint as defendant, claimed to have some equitable interest in said works and business. The goods manufactured at said works were consigned to the Russell & Erwin Manufacturing Company for sale upon commission and sent to the store of that company, in the city of New York, where said Bruff was stationed as manager as aforesaid. In January, 1873, by an arrangement on the part of Douglass and Bruff a purchase was made from said F. L. Ames of the said factories and the machinery, goods and materials there situated, and certain patent rights, and the same were conveyed to said Richard P. Bruff.

The price paid for this purchase was $183,000, of which $61,290.08 was paid to said Ames in cash and the remainder in four notes signed by Thomas Douglass, two of which, amounting to $61,290.08, were indorsed by the defendant Thompson J. S. Flint, and two others, amounting to the like sum of $61,290.08, were indorsed by said Bruff in the name and behalf of the Russell & Erwin Manufacturing Company. The cash paid as aforesaid was borrowed of said Thompson J. S. Flint, and the note of Thomas Douglass was given him for the same, as well as a note for a certain other amount given to him for commissions, for indorsing.

Richard P. Bruff, after receiving conveyance of said property, thereupon made and executed a written declaration of trust, dated January 30, 1873, in which, after reciting the conveyance of said

property to him, he also recites that the Russell & Erwin Manufacturing Company had agreed " to *contribute and add* thereto all the steel which might be required for the term of one year at said works, and then agrees that he will hold and manage said property, and conduct the business of said works, and the sale of the product thereof, under the name of the "Douglass Manufacturing Company," upon the trusts and for the benefits of the persons, firms and corporations thereinafter named, which were :

First.  To pay the expenses of the business.  Then to pay Barney, Butler & Parsons certain promissory notes of Thomas Douglass, therein named.  Then to pay Thompson J. S. Flint four certain promissory notes therein named, payable twelve months after date.

The instrument then provides that the business shall be wound up in case of default in the payment of any of the said notes to the said Flint, and for the sale of the property and the application of the proceeds to the payments provided for therein, but that otherwise the trust shall be continued for the following purposes :

First.  To reimburse the "Russell & Erwin Manufacturing Company" for all sums expended by them for steel delivered by them to the trustee in the prosecution of said business.

Second.  To pay to the Russell & Erwin Manufacturing Company two notes of Thomas Douglass, amounting to $61,290.08, payable twenty-four months from date.  These were the two notes before mentioned which had been indorsed by said Bruff in the name of the Russell & Erwin Manufacturing Company and delivered to said Ames.

The instrument then goes on to provide for the winding up of the business and sale of the property in case of default in the payment of any of said sums, and also for the transfer or payment to Thomas Douglass of any residue or balance of said property, or the proceeds thereof, that might remain after the payment of all the sums aforementioned.

The said Richard P. Bruff accordingly entered upon the execution of said trust and conducted said business from the date of said instrument until about July 24, 1874.

The goods manufactured at said works during said time were consigned to "The Russell & Erwin Manufacturing Company" for sale upon commission, and sales were made therefrom as well as

from the stock of goods which had been manufactured and sent to said store previous to Bruff's trusteeship, and which were, held for sale in said store in manner as stated below.

In the meantime Bruff had paid out of the proceeds of said business the *current expenses thereof*, and had also paid in full the notes held by the said Barney, Butler & Parsons, and one of the notes held by the said T. J. S. Flint, and also had made the payment mentioned below.

At the time of the conveyance of the said real estate and factories and their contents to Bruff the Russell & Erwin Manufacturing Company held in their warehouse, in New York, a stock of manufactured mechanics' tools of the value of about $100,000, which had been consigned to them for sale from said factories by F. L. Ames.

This stock of goods was at that time purchased by Douglass of Ames for $100,000, Douglass giving Ames his promissory notes for that amount. By vote of the board of directors of the Russell & Erwin Manufacturing Company, Bruff, as the agent and attorney of that company, was authorized to guarantee the payment of those notes, taking said stock as security to indemnify the Russell & Erwin Manufacturing Company therefor. Under this authority Bruff indorsed said notes in the name of the Russell & Erwin Manufacturing Company and the stock of goods was held in the store of the Russell & Erwin Manufacturing Company, and sales were made therefrom by Bruff during the time of his continuance in said trust, and he paid out of the proceeds a portion of said notes, amounting to some $60,000. The balance of said notes has since been paid by the Russell & Erwin Manufacturing Company.

The last-mentioned transaction, viz., the purchase of said stock of manufactured goods by Douglass and the guarantee of his notes therefor and the holding of the stock as security, was the only part of the arrangement at that time known to, or contemplated by, the board of directors of the Russell & Erwin Manufacturing Company, excepting that the understanding was that they were to continue to receive consignments of goods from the factories as before.

The fact of the conveyance of the real estate and factories, or any of the property, to Bruff, and of his making the declaration of trust, was unknown to the board of directors of the Russell & Erwin Manufacturing Company, or to any other of the officers of that

company, excepting Bruff himself, for more than a year after the date of the declaration of trust. Bruff states that it became known to them in February or March, 1874, and other witnesses state that it became known to them for the first time in May, 1874. The declaration of trust was not recorded.

There is no evidence in the case of any application by said Bruff for or refusal by the Russell & Erwin Manufacturing Company, or its board of directors or any of its officers, to furnish the steel necessary for carrying on the business of said trust as provided for by the declaration of trust. Bruff did, however, apply to the plaintiffs to furnish steel upon a credit of nine months and agreed to give them the indorsement of the Russell & Erwin Manufacturing Company upon the notes to be given for said steel, which notes were to be made by him on behalf of the Douglass Manufacturing Company. The complainants thereupon from time to time furnished steel to said works to the amount, in the aggregate, of about $70,000. Notes were from time to time given therefor, and some of these notes, upon becoming due, were renewed.

At the time of the commencement of the action the plaintiffs' claim was represented by nine promissory notes, amounting to $29,709.15, and an open account amounting to $7,205.92. The notes were indorsed by Bruff in the name of the Russell & Erwin Manufacturing Company. There is no evidence in the case showing distinctly what portion of this steel was furnished within one year from the date of the trust deed and what portion was furnished after that time.

The fact of the indorsement of notes of the Douglass Manufacturing Company by Bruff in the name of the Russell & Erwin Manufacturing Company was not known to the board of directors or to the other officers of said latter company until the spring of 1874. The officers of the Russell & Erwin Manufacturing Company then for the first time also ascertained that payments from their funds to a large amount had been made by Mr. Bruff on account of the Douglass Manufacturing Company, so that a large debt from that Company to the Russell & Erwin Manufacturing Company had accumulated. As this had been done by Bruff without authority he was liable thereupon to the company. It was also found that Bruff was liable to the Russell and Erwin Manufacturing Company

upon certain matters outside of the Douglass Manufacturing Company transactions and not connected with this case.

The Russell & Erwin Manufacturing Company being thus aroused, at least partially, to a sense of their situation an examination was commenced, and Bruff, in order to bridge over the difficulty and assure the Russell & Erwin Manufacturing Company, made the conveyance to that company referred to in the complaint.

It recites that Bruff was indebted to the Russell & Erwin Manufacturing Company for moneys of that corporation advanced to the Douglass Manufacturing Company by him without authority while acting for certain purposes as the attorney of said corporation, and also on account of divers other acts and matters performed by him in connection with its affairs in excess of his authority or without authority, or without due care in the management of its business, and that he might thereafter become indebted to said corporation on account of said matters and other matters, and, also, that he had without authority, indorsed certain negotiable paper in the name of said corporation. The instrument then proceeds to transfer to said corporation 448 shares of the capital stock of the Russell & Erwin Manufacturing Company, and his right, title and interest in 400 other shares of such stock then held by the Middletown Savings Bank as collateral security for a loan, and also 210 shares in the Hudson River Iron Company. This stock the Russell & Erwin Manufacturing Company agreed to apply to the payment of said indebtedness and liability of said Bruff to them and to indemnify them against any loss or damages which might accrue to them by reason of the premises, matters and things aforesaid, and to pay over the balance to said Bruff.

Thomas Douglass also executed the instrument referred to in the complaint whereby he transferred to the Russell & Erwin Manufacturing Company all his interest in the property held by Bruff, as trustee, which the Russell & Erwin Manufacturing Company agreed to apply to the payment of the indebtedness of said Douglass, and of the said Douglass Manufacturing Company to the Russell & Erwin Manufacturing Company, then existing, or which might thereafter arise, and to the indemnification of the Russell & Erwin Manufacturing Company for any liability on their part, for or on account of said Douglass or said Douglass Manufacturing Company,

so far as the same should be sufficient, and to transfer any balance thereof, if any, to said Douglass.

The officers of the Russell & Erwin Manufacturing Company having now heard that the title to the factories and property of the Douglass Manufacturing Company actually stood in the name of their agent, R. P. Bruff, and having, by information received from Thomas Douglass, heard of the existence of some instrument of trust which had been executed by Bruff, prosecuted their inquiries still further and endeavored to ascertain its nature and contents.

Bruff presented to them, on the twentieth of May, a rough draft of an instrument which he said was substantially the same as the trust deed. The officers of the Russell & Erwin Manufacturing Company, not being satisfied with this, continued to press Bruff for the original declaration of trust or a copy of it. They did not, however, succeed in getting any thing further in answer to their inquiries until July 11, 1874, when, in answer to a letter written to Bruff by the assistant treasurer of the company, again demanding a copy of the declaration of trust, they received by mail from Bruff, who was then in Saratoga, a paper purporting to be a copy of the instrument.

This was not, however, a true copy of the trust deed, and the provision relating to the notes of Thomas Douglass for $61,290.08, indorsed by Bruff in the name of the Russell & Erwin Manufacturing Company, was entirely omitted, and the corporation were up to this time ignorant of the existence of any such notes. They finally, however, about the 23d of July, 1874, succeeded in obtaining a copy of the declaration of trust. And now, having become aware of the large indebtedness of the Douglass Manufacturing Company to Thompson J. S. Flint, a conference ensued between them and Mr. Flint and Mr. Douglass upon the subject of the affairs of the Douglass Manufacturing Company, the condition of its property, and the fact that default had been made in the payment of certain notes mentioned in the declaration of trust.

It was found that the property was indebted to Mr. Flint in the sum of about $113,000, and to the Russell & Erwin Manufacturing Company, for advances, etc., in the sum of about $147,000, and that these sums could not probably be satisfied and paid by continuing the provisions of the trust deed, under Mr. Bruff, as trustee. Mr. Douglass also claimed that the property was indebted to him

in the sum of $2,000 for money advanced, and Mr. Bruff claimed a similar indebtedness to him of $16,000. It was therefore decided that the parties interested under the trust deed should call upon Bruff, as trustee, to transfer all the trust property in his hands to T. J. S. Flint and the Russell & Erwin Manufacturing Company for the consideration of the said debts due to them respectively. A written request to that effect was accordingly made to Bruff, and signed by the Russell & Erwin Manufacturing Company, T. J. S. Flint and Thomas Douglass. In compliance with this request Mr. Bruff transferred the trust property to Mr. Flint and the Russell & Erwin Manufacturing Company, by deed, dated July 24, 1874.

On July 28, 1874, a corporation by the name of the Douglass Manufacturing Company was formed, under the laws of the State of Connecticut, and was located at Seymour, Connecticut.

T. J. S. Flint and the Russell & Erwin Manufacturing Company, by their deed, dated July 31, 1874, conveyed to the newly-established corporation all the property, real and personal, which had been conveyed to them by Bruff, as trustee aforesaid.

The capital stock of the new corporation was fixed at $280,000, which was subscribed for and taken by the defendants in proportion to their respective claims against the property. The plaintiffs, under the facts disclosed, claim to have a lien upon the trust estate for the amount of their debt; and judgment was rendered in their favor and for the amount of their demand. It appeared, in addition to these facts, that prior to the execution of the deed or assignment of July 24, 1874, the indebtedness arising from the execution of the trust was discussed, and it was understood and agreed that all legal or legitimate claims should be adjusted.

The evidence leading to this fact was objected to, it is true, and overruled. It is not important here, however, to pass upon the admissibility of that proof, although it is apparent that in an action like this it would not be declared objectionable, taken in connection with the whole scope of the issues, the nature of the claim, the defense and evidence given. But assuming that it was improperly received, it is quite clear that it could in no way prejudice the defendants in the result, because the obligation assumed by the acceptance of the trust estate was that it should be appropriated in the manner directed by the trust, and it passed, therefore, charged

with all matters justly affecting it. The authorities are numerous, if not uniform, to sustain the proposition that the purchase of the trust estate, with knowledge of the trust, imposes upon the purchaser the same duties in respect to the property which rested upon the trustee from whom he purchased. (Perry on Trusts, §§ 217, 328, and cases cited; Tiffany & Ballard on Trusts, p. 197 and cases cited.)

The rule holds even when the purchase is for a valuable consideration, as the text of these writers, and cases cited, show. The defendants named, however, paid nothing for the property they received and accepted by the transfer. It was, ostensibly, to secure them against loss that the assignment was made. If the question were *res nova* the courts would so decide as matter of justice and equity, if there be any distinction between such terms.

The defendants mentioned knew of the trust; they sought for and obtained a copy of the deed. The conduct of Bruff, the agent of the defendant the Russell & Erwin Manufacturing Company, has no relevancy to the issue, whether, under the circumstances, the defendants named are not bound to pay the plaintiff's claim. The first duty imposed by the trust was to pay the expenses of the business, and the steel supplied was the very basis of the business, and without which it could not proceed. The learned justice presiding at the trial, found that the estate was worth $400,000 and upwards, including the goods manufactured and in process of manufacture, from the steel purchased, and the proceeds of such as had been sold out but not paid for; and further, that the whole trust property was more than sufficient to pay the entire indebtedness created by Bruff in carrying on the business of the trust. There may be some conflict as to the value of the trust estate, but it is not serious, and does not demand any interference with the finding mentioned.

It thus appears that the assets which went into the hands of the Russell & Erwin Manufacturing Company and Flint, and were appropriated by them, were not only applicable to the plaintiffs' debt, but charged with it, and were sufficient to pay it. When these conclusions were reached, the personal liability of the defendants named was established, and the first issue was determined in favor of the plaintiffs, namely, whether, under the trust created and the subsequent events by which the defendants named succeeded to and

assumed it, they were liable for the plaintiffs' claim for steel sold and delivered and used in the business of the trust. None of the facts set forth in the statement made, which precedes this opinion, and which are most favorably stated for the defendants named, affects the view thus expressed; and none of the exceptions taken are such as to require a new trial on this branch of the inquiry, namely, as to the liability of the defendants named.

When this conclusion was arrived at, the next and remaining issue was, what amount was justly due to the plaintiffs for the steel furnished?

The defendants interposed, as a defense, that if the steel was furnished by the plaintiffs their claim was unreasonable and excessive in this, that the steel was defective and of bad quality and was not worth the amount claimed for it, and was of very little benefit, if any, in the manufacture of the goods. In regard to this defense, it appears that a motion was made for a reference, which was denied, because it was asserted that an important question of law was involved, and that unless under and by virtue of the construction given to the trust, referred to herein, a lien resulted in their favor, the plaintiffs could not succeed. It was conceded then that if the lien was declared to exist, a reference to take an account would become necessary, in order to dispose of the case. This proceeding is not referred to as affecting the plaintiffs' status, but incidentally. During the trial it was mentioned, and the attention of the justice presiding was called to it at an early stage.

The defendants' counsel subsequently objected to a question, because the subject of it did not arise on the hearing then proceeding. The learned justice said: "It is merely general;" and the counsel for the defendants then observed: "Your honor limits the effect of this testimony to its bearing on the trust and the rights on that paper;" and the answer was, "yes." This, it is apparent, related to the proposition, that in the case the issue then under consideration was as to the lien of the plaintiffs, or their right to recover without regard to the amount. Subsequently, and while the defendants' witness was on the stand, an answer was made to the question: "What is the quality of the goods?" and the plaintiffs' counsel objected to it so far as it concerned the quality of the steel. The learned justice then said: "I have ruled that the ques-

tion of the quality of the steel does not come up now," and proceeded to strike out a part of the answer bearing upon that subject. Again, the defendants' counsel asked the witness to state what the complaints were which were made of the goods manufactured of the plaintiffs' steel; and the question was objected to. The ruling was as follows : " The Court — So far as the value of the goods are concerned, to show the value of them, I will admit it ; but so far as showing the character of the steel, that is a question to be determined hereafter. If the court determines that it is a question in the case, that goes to a reference ; at present I exclude every thing going to the quality of the steel to reduce the price." And the defendants excepted.

When the decision of the learned justice was filed, in the opinion was found as follows : " The first question on the trial was the right to attack the value of the steel furnished, to reduce the amount due. It seems to me, in the absence of fraud, and none such appeared, the defendants are estopped from questioning the amount. The steel was regularly furnished on orders received by the trustee ; when objected to returned ; accounts regularly rendered, and notes given for them, and the steel used without objection."

This is in harmony with the ruling made, namely : " If the court determines that it is a question (referring to the character of the steel) in the case, that goes to a reference."

The proposition upon which the defense mentioned, and thus treated, was ultimately disposed of is now presented for consideration. Were the defendants estopped, by the circumstances, from assailing the quality of the steel, and claiming such a deduction on account of its bad quality, if established, as would be just? It was proved upon the trial, and not gainsaid, that the quality of the steel could not be ascertained without " working it up," as the witness said, and therefore the inspection and examination of it would not reveal its defects or imperfections. The implied warranty, that it was fit for the purpose for which it was sold, did not under such circumstances, impose upon the defendants or their predecessor the trustee, the duty of an immediate scrutiny of the steel and of giving notice of the defects discovered. They had a right to claim a deduction from the price when that was demanded. When the

contract of sale is executory the right of the purchaser to recover damages, on the ground that the article furnished does not correspond with the contract, will not survive an acceptance and retention of the property *after an opportunity to ascertain the defect*, without notifying the vendor. (*Reed* v. *Randall*, 29 N. Y., 363.) If, in the case of an executed contract, there can be an express warranty or undertaking accompanying the sale and delivery of the goods, that they are of a certain quality or condition, this agreement is obligatory upon the parties and is not merged in the act of delivery and acceptance. (*Muller* v. *Eno*, 14 N. Y., 597; *Waring* v. *Mason*, 18 Wend., 425; *Day et al.* v. *Pool et al.*, 52 N. Y., 416.) In either view, therefore, the defendants had the right to assail the claim of the plaintiffs in the manner indicated, and the learned justice was in error in excluding the defense thus presented.

The test of the steel involved its use, and it could not be rejected or returned. The circumstances detailed, such as the presentation of bills and settlement by notes, while they did not create an estoppel, were very important upon the issue, and would perhaps have been sufficient to demonstrate the want of good faith in making the defense interposed; but that does not meet the emergency. The defendants were entitled to their day in court on the subject, and could not be deprived of it. All that they can ask, however, is that there shall be a modification of the judgment, and that in regard to the amount due there shall be a reference, thus changing the judgment from an absolute to an interlocutory one. Their theory of the trial was, that if the lien were declared to exist, the amount to be paid would become the subject of another examination before a referee. The result is, that the judgment should be modified, as suggested; for which ample power is conferred by section 1317 of the Code of Civil Procedure.

We think the disposition made of the motion for a new trial was correct. The opinion of Justice LAWRENCE is an able exposition of the law of the application made to him, and satisfactorily demonstrates the propriety of denying the motion made.

DANIELS, J. :

The case of *Gurney* v. *Atlantic and Great Western Railroad Company* (58 N. Y., 358) seems to entitle the defendants to give

the evidence, which was rejected, concerning the quality of the steel. I concur.

DAVIS, P. J., concurred.

Judgment modified as directed in opinion, and order denying motion for new trial, on the ground of newly-discovered evidence, affirmed.